# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARRYL CALLEBS,<br><br>          Plaintiff,<br><br>v.<br><br><br>RETAIL PROPERTIES OF AMERICA, INC., GERALD M. GORSKI, BONNIE S. BUIMI, FRANK A. CATALANO, JR., STEVEN P. GRIMES, RICHARD P. IMPERIALE, PETER L. LYNCH, AND THOMAS J. SARGEANT,<br><br>          Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Darryl Callebs ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Retail Properties of America, Inc. ("RPAI" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning RPAI and the Defendants.

## SUMMARY OF THE ACTION

1.  This is an action brought by Plaintiff against RPAI and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company and Kite Realty Group Trust ("Kite Realty") (the "Proposed Transaction").

2.  On July 18, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Kite Realty and KRG Oak, LLC ("Merger Sub"), a wholly owned subsidiary of Kite Realty. Pursuant to the terms of the Merger Agreement RPAI will merge with and into Merger Sub, with Merger Sub surviving as a wholly owned subsidiary of Kite Realty. Immediately following, Merger Sub will merge with and into Kite Realty Group, L.P., the operating partnership of Kite Realty, so that all of the assets of Kite Realty will continue to be owned at or below the Kite Realty Operating Partnership level. As a consequence of the merger, the Company's shareholders will receive 0.623 shares of Kite Realty for each share of Company common stock they own (the "Merger Consideration").

3.  On August 23, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.  For these reasons, and as set forth in detail herein, Plaintiff asserts claims against RPAI and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to RPAI

shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of RPAI shares.

9. Defendant RPAI is incorporated under the laws of Maryland and has its principal executive offices located at 2021 Spring Road, Suite 200, Oak Brook, Illinois 60523. The Company's common stock trades on the New York Stock Exchange under the symbol "RPAI."

10. Defendant Gerald M. Gorski ("Gorski") is and has been the Chairman of the Board of RPAI at all times during the relevant time period.

3

11. Defendant Bonnie S. Buimi ("Buimi") is and has been a RPAI director at all times during the relevant time period.

12. Defendant Frank A. Catalano, Jr. ("Catalano") is and has been a RPAI director at all times during the relevant time period.

13. Defendant Steven P. Grimes ("Grimes") is and has been the Chief Executive Officer and a director of RPAI at all times during the relevant time period.

14. Defendant Richard P. Imperiale ("Imperiale") is and has been a RPAI director at all times during the relevant time period.

15. Defendant Peter L. Lynch ("Lynch") is and has been a RPAI director at all times during the relevant time period.

16. Defendant Thomas J. Sargeant ("Sargeant") is and has been a RPAI director at all times during the relevant time period.

17. Defendants Gorski, Buimi, Catalano, Grimes, Imperiale, Lynch, and Sargeant are collectively referred to herein as the "Individual Defendants."

18. The Individual Defendants, along with Defendant RPAI, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19. RPAI is a real estate investment trust that owns and operates high quality, strategically located open-air shopping centers, including properties with a mixed-use component. As of September 30, 2020, the Company owned 102 retail operating properties in the United States representing 20.0 million square feet.

### The Company Announces the Proposed Transaction

20. On July 19, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> INDIANAPOLIS and CHICAGO, July 19, 2021 /PRNewswire/ -- Kite Realty Group Trust (NYSE: KRG) and Retail Properties of America, Inc. (NYSE: RPAI) today announced that they have entered into a definitive merger agreement under which RPAI would merge into a subsidiary of KRG, with KRG continuing as the surviving public company. The strategic transaction joins together two high-quality portfolios with complementary geographic footprints creating a top five shopping center REIT by enterprise value. The combined company is expected to have an equity market capitalization of approximately $4.6 billion and a total enterprise value of approximately $7.5 billion upon the closing of the transaction assuming a KRG share price of $20.83, which was the closing price on July 16, 2021. This immediately accretive transaction, paired with a strong balance sheet and significant value creation opportunities, is expected to provide a runway to increase longterm value for shareholders.
>
> Under the terms of the merger agreement, each RPAI common share will be converted into 0.6230 newly issued KRG common shares in a 100% stock-for-stock transaction. Based on the closing share price for KRG on July 16, 2021, this represents a 13% premium to RPAI's closing stock price on July 16, 2021. On a pro forma basis, following the closing of the transaction, KRG shareholders are expected to own approximately 40% of the combined company's equity and RPAI shareholders are expected to own approximately 60%. KRG anticipates assuming all RPAI debt and has obtained a financing commitment to provide a $1.1 billion term loan bridge facility in the event certain debt consents cannot be obtained prior to the closing of the transaction. The parties expect the transaction to close during the fourth quarter of 2021 subject to customary closing conditions, including the approval of both KRG and RPAI shareholders. The transaction was unanimously approved by the Board of Trustees of KRG and the Board of Directors of RPAI.
>
> The merger will create an operating portfolio of 185 open-air shopping centers comprised of approximately 32 million square feet of owned gross leasable area. These properties are primarily located in "Warmer and Cheaper" metro markets in the United States with 70% of centers by annualized base rent ("ABR") having a grocery component. The combined company is expected to benefit from increased scale and density in strategic markets, deeper tenant relationships given the broader mix of open-air retail types, an appropriately sized development pipeline and a strong balance sheet.
>
> "This merger marks a momentous day for KRG and our shareholders," said John A. Kite, Chairman and CEO of Kite Realty Group. "The combination of our firms brings together two high-quality, complementary portfolios. The combined

company will have durable cash flows, operational upside and external value creation opportunities. The financial benefits of the transaction include immediate earnings accretion, while maintaining a strong balance sheet. This merger further demonstrates our conviction in open-air retail centers as essential shopping destinations and last mile fulfillment centers. We are energized about the future of this combined company."

"After many years of curating both of our portfolios, combining them into one company will allow us to generate the best results for both sets of shareholders over the long term," said Steven P. Grimes, CEO of RPAI. "Our increased scale will benefit the business both operationally and financially, allowing us to take advantage of reduced cost of capital as well as pursue future value creation opportunities by partnering KRG's development expertise with our embedded development pipeline. We are excited to present this transaction to our shareholders, who will be the beneficiaries of the near-term and future benefits of the combined company."

**Summary of Strategic Benefits**

The merger of KRG and RPAI is expected to create a number of operational and financial benefits, including:

- **Positive Financial Impacts and Immediate Accretion**
    - Provides immediate accretion to earnings per share upon realizing cash expense synergies of $27 - $29 million
    - Larger scale will reduce cost of capital, thereby driving higher net income to shareholders.
    - Significantly increases shareholder liquidity allowing larger investor base to hold more meaningful positions in the combined entity.
- **Enhances Portfolio Quality and Diversification**
    - Retail ABR per square foot of $19.29.
    - Broader mix of open-air retail types allowing for deeper and more diverse tenant relationships.
    - 70% of ABR is located in centers with a grocery component.
    - Diverse combined tenant base with no single tenant representing more than 2.4% of total ABR.
- **Significant Presence in Strategic Markets**
    - Maintains sector-leading exposure to Warmer and Cheaper markets.
    - Substantial portfolio concentration, with approximately 40% of ABR in growth states of Texas and Florida.
    - Bolsters presence in Dallas, Atlanta, Houston and Austin.
    - Meaningful presence in other strategic gateway markets such as Washington, D.C., New York, and Seattle.
- **Generates Significant Value Creation Opportunities**
    - Presents near-term, organic growth opportunities through lease-up of vacancies caused by the pandemic.

- o Active development and redevelopment projects expected to deliver additional Net Operating Income.
- o KRG's extensive development expertise in a variety of property types provides additional potential value creation for both active and future development projects.
- o Appropriately sized and measured development pipeline will offer potential additional value creation opportunities.
- **Strengthens Balance Sheet**
    - o Combined balance sheet poised to capture future growth opportunities.
    - o Net debt plus preferred to EBITDA ratio anticipated to be 6.0x inclusive of expected G&A synergies.
    - o No material debt maturities until 2023, with an appropriate maturity ladder going forward.
- **Creates a Top 5 Shopping Center REIT**
    - o Combined company will have an estimated $7.5 billion total enterprise value upon the closing of the transaction assuming a KRG share price of $20.83, which was the closing price on July 16, 2021.
    - o Combination of operating best practices expected to drive Net Operating Income improvements.
    - o Deepens tenant relationships and increased optionality to a broader mix of open-air retail formats.

**Leadership and Organization**

The combined company will continue to be operated at the high standards previously established at both KRG and RPAI. The number of trustees on KRG's board will be expanded to thirteen with four members of the existing Board of Directors of RPAI to be appointed to KRG's board. John Kite will continue to serve as Chairman of the Board of Trustees of the combined company. William Bindley will continue to serve as Lead Independent Trustee.

The KRG management team will lead the combined company, with John Kite as Chief Executive Officer, Thomas McGowan as President and Chief Operating Officer and Heath Fear as Chief Financial Officer. The approach to integration will draw from the best practices of both companies to ensure continuity for tenants, employees and other stakeholders.

Upon completion of the merger, the company's headquarters will remain in Indianapolis, Indiana. The company will retain the Kite Realty Group name and trademarks and will continue to trade under the NYSE symbol KRG.

**Dividend Policy**

KRG intends to maintain its current dividend policy post-closing. Given the current dividend levels and conversion ratio, RPAI shareholders will experience a

dividend increase of approximately 50% from current levels (based on current annualized distribution amount).

The timing of the pre-closing dividends of KRG and RPAI will be coordinated such that, if one set of shareholders receives their dividend for a particular quarter prior to the closing of the merger, the other set of shareholders will also receive their dividend for such quarter prior to the closing of the merger.

**Advisors**
BofA Securities is acting as lead financial advisor to KRG, with KeyBanc Capital Markets also acting as financial advisor to KRG. Hogan Lovells US LLP is acting as legal advisor to KRG. Citigroup Global Markets Inc. is acting as exclusive financial advisor and Goodwin Procter LLP is acting as legal advisor to RPAI.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT**

21. On August 23, 2021, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
<u>Misrepresentations or Omissions Regarding the Company's Financial Projections</u>**

23. The Registration Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

24. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

25. In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

26. Specifically, with respect to the Kite Realty's projections, the Kite Realty must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) FFO per share; (ii) EBITDA; and (iii) Unlevered Free Cash Flow.

27. With respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Cash NOI; (ii) FFO per Share; (iii) EBITDA; and (iv) Unlevered Free Cash Flow.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

28. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Citi's Financial Opinion

29. The Registration Statement contains the financial analyses and opinion of Citigroup Global Markets Inc. ("Citi") and BofA Securities, Inc. ("BofA") concerning the Proposed Transaction, but fails to provide material information concerning such.

30. With respect to BofA's *Discounted Cash Flow Analysis* for the Company, the Registration Statement fails to disclose: (i) the Company's terminal values; (ii) the inputs and assumptions underlying BofA's utilized terminal forward multiples of 14.0x to 18.0x to RPAI's fiscal year 2026 estimated EBITDA; (iii) the inputs and assumptions underlying the discount rate range of 6.50% to 8.00; and (iv) the Company's weighted average cost of capital.

31. With respect to BofA's *Discounted Cash Flow Analysis* for Kite Realty, the Registration Statement fails to disclose: (i) the terminal values for Kite Realty; (ii) the inputs and assumptions underlying the use of terminal forward multiples of 14.0x to 18.0x to Kite Realty's terminal year estimated EBITDA; (iii) the inputs and assumptions underlying the discount rate range of 6.50% to 8.00%; and (iv) Kite Realty's weighted average cost of capital.

32. With respect to Citi's *Discounted Cash Flow Analyses* for RPAI, the Registration Statement fails to disclose: (i) the line items used by Citi to calculate the unlevered free cash flows from April 1, 2021 through December 31, 2026; (ii) RPAI's terminal values as of

December 31, 2026; (iii) the basis underlying BofA's use of the range of terminal capitalization rates of 6.15% to 7.15%; (iv) the basis underlying Bofa's use of the discount rate range of 7.42% to 8.40%; (v) the weighted average cost of capital for RPAI; (vi) the Company's net debt and non-controlling interests; (vii) net operating income for the Company for the fiscal year ending December 31, 2026; and (viii) the Company's terminal year net operating income.

33. With respect to Citi's *Discounted Cash Flow Analyses* for Kite Realty, the Registration Statement fails to disclose: (i) the line items used by Citi to calculate the unlevered free cash flows from April 1, 2021 through December 31, 2026; (ii) Kite Realty's terminal values as of December 31, 2026; (iii) the basis underlying BofA's use of the range of terminal capitalization rates of 6.15% to 7.15%; (iv) the basis underlying Bofa's use of the discount rate range of 7.69% to 8.72%; (v) the weighted average cost of capital for Kite Realty; (vi) Kite Realty's net debt and non-controlling interests; (vii) net operating income for Kite Realty for the fiscal year ending December 31, 2026; and (viii) the Kite Realty's terminal year net operating income.

34. With respect to Citi's *Selected Public Companies Analysis* for RPAI, the Registration Statement fails to disclose the individual multiples and financial metrics for each company observed in the analysis.

35. With respect to Citi's *Selected Public Companies Analysis* for Kite Realty, the Registration Statement fails to disclose the individual multiples and financial metrics for each company observed in the analysis.

36. With respect to Wall Street research analysts' price targets analysis, the Registration Statement fails to disclose: (i) the analysts observed; and (ii) the corresponding price targets.

37.     With respect to Citi's *Illustrative Discounted Cash Flow Analysis* for the combined company, the Registration Statement fails to disclose: (i) unlevered free cash flows that the combined company was expected to generate from April 1, 2021, through December 31, 2026; (ii) the basis underlying Citi's use of the selected range of terminal implied capitalization rates of 6.15% to 7.15%; and (iii) the basis underlying Citi's use of a discount rate range of 7.42% to 8.40%.

38.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

39.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

45. The Defendants knew or were negligent in not knowing that the Registration

Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

46. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

48. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of RPAI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of RPAI, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

54. In addition, as set forth in the Registration Statement at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.   Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 10, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*